TILCON-WARREN QUARRIES INC. *vs.* COMMISSIONER OF
REVENUE
(and a companion case).

Suffolk. April 3, 1984. — August 9, 1984.

Present: HENNESSEY, C.J., WILKINS, LIACOS, LYNCH, & O'CONNOR, JJ.

*Taxation,* Manufacturing corporation. *Words,* "Manufacturing."

A corporation engaged in quarrying and crushing stone, and selling its
product to others for use in making asphalt, was not a "manufacturing"
corporation for the purposes of G. L. c. 63, § 42B, and G. L. c. 59,
§ 5, Sixteenth (5). [672-674]

APPEAL from a decision of the Appellate Tax Board.

*Mary Ryan (Michael E. Mooney* with her) for the taxpayer.

*Carolyn V. Wood,* Assistant Attorney General, for the Com-
missioner of Revenue.

LYNCH, J. The question presented by these two appeals is
whether the business of quarrying and crushing stone and sand
is "manufacturing," as that term is used in G. L. c. 63, § 42B[1]
and G. L. c. 59, § 5, Sixteenth (5).[2]

The Appellate Tax Board (board) sustained the refusal of
the Commissioner of Revenue (Commissioner) to classify the
taxpayer as a manufacturing corporation for the years 1981 and

---

[1] General Laws c. 63, § 42B, as appearing in St. 1976, c. 415, § 34,
provides, in pertinent part: "Every corporation, association or organization
established, organized or chartered under laws other than those of the com-
monwealth, which has a usual place of business in the commonwealth and
is engaged in manufacturing therein . . . shall, for the purposes of this
chapter, be deemed to be a foreign manufacturing corporation . . . ."

[2] Clause Sixteenth (5) provides that the machinery of foreign manufactur-
ing corporations shall be exempt from local taxation, although it is indirectly
taxed by inclusion in the measure of the excise imposed on the corporation
under G. L. c. 63. *Franki Found. Co. v. State Tax Comm'n,* 361 Mass.
614, 616 (1972).

1982. We agree with the board's substantive decision and do not reach the taxpayer's argument that the board erred in dismissing its 1981 petition for lack of jurisdiction.

The taxpayer[3] is and was for the relevant time periods a Delaware corporation with its principal offices in Brockton, and its principal place of business in Acushnet. Applications to the Commissioner for classification as a manufacturing corporation were denied on August 5, 1981, and March 26, 1982. The taxpayer appealed both denials. As to the first, the board ruled that it was without jurisdiction, as the taxpayer's appeal was not timely filed in accordance with G. L. c. 58, § 2.[4] As to the second, the board ruled on the merits that the taxpayer was not a "manufacturing" corporation.

The facts, as stipulated by the parties, are as follows. The taxpayer begins by removing the overburden of soil, vegetation, and soft rock from the bedrock at its Acushnet properties. Holes are precisely drilled into the bedrock and explosives carefully inserted which, when detonated, blast the solid rock into pieces small enough to be transported by truck to the processing plant. There the large rocks are crushed smaller and screened to separate them by size. This process is controlled by an elaborate electronic control panel operated by experienced technicians. The crushed stone accounts for 85% of the taxpayer's product. Of this, 30% is sold for use "as is" as road base material or for leaching fields and septic systems. The remainder is sold to customers who use it in making bituminous asphalt or concrete.

---

[3] Tilcon-Warren Quarries Inc. has discontinued operations and Tilcon Quarries Massachusetts Inc. has assumed its operations. We shall refer to a single taxpayer.

[4] General Laws c. 58, § 2, as amended by St. 1978, c. 514, § 35, provides in pertinent part: "Any person aggrieved by any classification made by the commissioner . . . may, on or before April thirtieth of said year or the thirtieth day after such list is sent out [to the boards of assessors] by the commissioner, whichever is later, file an application with the appellate tax board . . . ." The "list" referred to is a list of corporations classified as "manufacturing" corporations which the Commissioner is required to forward to each board of assessors by April 1 each year. This list is a public document and can be judicially noticed. *Mariani* v. *Trustees of Tufts College,* 1 Mass. App. Ct. 869, 870 (1974).

The taxpayer also produces sand. In this process, crushed stone screenings are combined with water, larger stones are removed, and sand of eleven gradations is separated in a classifier chamber. These eleven gradations are blended by technicians to produce two basic sizes of sand, which are used in making asphalt or concrete.

There is no dispute in this case as to the board's findings of fact and, in any event, those findings are final as long as they are supported by substantial evidence. *New Boston Garden Corp.* v. *Assessors of Boston,* 383 Mass. 456, 465-466 (1981). Our review is limited to questions of law. *Coomey* v. *Assessors of Sandwich,* 367 Mass. 836, 839 (1975).

The decisive question here is whether the board was correct in concluding that the taxpayer had not "effectuated the kind and degree of change in its raw material which . . . is necessary in order to characterize an activity as manufacturing." We conclude that it was.

The definition of "manufacturing," though "chameleon-like," *Southeastern Sand & Gravel, Inc.* v. *Commissioner of Revenue,* 384 Mass. 794, 795 (1981), and "flexible," *Joseph T. Rossi Corp.* v. *State Tax Comm'n,* 369 Mass. 178, 181 (1975), nevertheless retains the basic concept articulated in *Boston & Me. R.R.* v. *Billerica,* 262 Mass. 439, 444-445 (1928): "[C]hange wrought through the application of forces directed by the human mind, which results in the transformation of some preexisting substance or element into something different, with a new name, nature or use." Yet the fact that this definition can be applied literally to a particular process is not the end of the inquiry. See, e.g., *Franki Found. Co.* v. *State Tax Comm'n,* 361 Mass. 614, 620 (1972) (installation of concrete footings at construction sites is not "manufacturing," even though change, new name, and new function occurs in raw material). Arguably this case can be distinguished from *Southeastern Sand & Gravel, Inc.* v. *Commissioner of Revenue,* 384 Mass. 794 (1981), because the raw material here is solid rock which must be blasted from the ground as opposed to gravel which is simply ground into smaller pieces. However, we conclude that extracting pieces of rock from the ground and

crushing them into usable sizes does not compel the conclusion that the process fits within the natural and ordinary meaning of "manufacturing." See *Wellington* v. *Belmont,* 164 Mass. 142, 143 (1895) (quarrying and breaking stone is not "manufacturing," under Pub. Sts. [1882] c. 11, § 20 [2]).

Numerous other States have held that quarrying and crushing stone do not constitute "manufacturing." Recently, in *Solite Corp.* v. *County of King George,* 220 Va. 661, 663 (1980), the court stated that "unless the processing transforms the new material into an article or a product of substantially different character, it cannot be considered to be manufacturing even though the processing increases the value or usefulness of the product," and held that after the taxpayer's processing, "the sand is still sand and the rock is still rock. [They] have not been transformed into articles of substantially different character." *Id.* at 665. See, e.g., *Iowa Limestone Co.* v. *Cook,* 211 Iowa 534, 541 (1930); *Schumacher Stone Co.* v. *Tax Comm'n,* 134 Ohio St. 529, 533 (1938); *Commonwealth* v. *Welsh Mountain Mining & Kaolin Mfg. Co.,* 265 Pa. 380, 382-383 (1919); *Rock of Ages Corp.* v. *Commissioner of Taxes,* 134 Vt. 356 (1975). In addition, numerous courts have held that the crushing and screening of rock into various sizes do not constitute manufacturing. See, e.g., *Leeds* v. *Maine Crushed Rock & Gravel Co.,* 127 Me. 51, 56-58 (1928); *Duke Power Co.* v. *Clayton,* 274 N.C. 505, 514-516 (1968) (crushing and cleaning of coal). Although a few States have held the contrary, we follow what is clearly the majority view. See, e.g., *West Lake Quarry & Material Co.* v. *Schaffner,* 451 S.W.2d 140 (Mo. 1970); *Tulsa Mach. Co.* v. *Oklahoma Tax Comm'n,* 208 Okla. 138 (1953). The process engaged in by the taxpayer is more akin to mining than to manufacturing. See *West Lake Quarry & Material Co.* v. *Schaffner, supra* (statute exempts machinery used in manufacturing *or* mining; quarrying is "mining"). See also *Byers* v. *Franklin Coal Co.,* 106 Mass. 131, 134 (1870).

Alternatively, the taxpayer argues that since its product is used by others in making asphalt, its process is a necessary first step in a manufacturing process. We have held that "proc-

esses which themselves do not produce a finished product for the ultimate consumer would be deemed 'manufacturing' . . . so long as they constitute an essential and integral part of a total manufacturing process." *Joseph T. Rossi Corp.* v. *State Tax Comm'n,* 369 Mass. 178, 181-182 (1975). In *Assessors of Boston* v. *Commissioner of Corps. & Taxation,* 323 Mass. 730, 748 (1949), for example, we upheld the decisions of the Commissioner and the board that the process of scouring wool was manufacturing, reasoning that it was an essential and integral step in the manufacture of textiles. But neither the *Joseph T. Rossi Corp.* case nor *Assessors of Boston* stands for the proposition that merely providing raw materials to a manufacturer is a "step" in the manufacturing process. The wool scourer is doing more than providing a raw material, it is performing one of the many tasks required in the process of transforming wool into cloth. In this case, the taxpayer simply provides two of the raw materials, crushed stone and sand, needed for the manufacture of asphalt. In such circumstances it cannot be said that the taxpayer has proved that it engaged in manufacturing within the meaning of the statute. *Southeastern Sand & Gravel, Inc.* v. *Commissioner of Revenue, supra* at 795 (interpreting identical provision applicable to domestic corporations). In the vast majority of decided cases involving crushed stone and sand sold as ingredients for cement and asphalt, the taxpayer's provision of those ingredients was not considered to be an essential step in the manufacturing process.

The taxpayer argues that it did not receive notice that it had not been classified as a corporation engaged in manufacturing for 1981 until August 5 of that year, so that its appeal filed on September 2, 1981, was within the thirty-day period provided in G. L. c. 58, § 2. See note 4, *supra.* The Commissioner, on the other hand, argues that distribution of the list to the boards of assessors in April, 1981, was notice of the taxpayer's failure to be classified and thus the appeal period

expired in May. As there is no dispute that the taxpayer was engaged in the same business in 1981 and 1982, we do not reach the jurisdictional issue.

*Decision of the Appellate Tax Board affirmed.*